Filed 1/26/26  P. v. Victor CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY SHAWN VICTOR,<br><br>    Defendant and Appellant. | D084272<br><br><br>(Super. Ct. No. SCD133532) |

APPEAL from an order of the Superior Court of San Diego County, Francis M. Devaney, Judge.  Affirmed.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, James Toohey and Daniel Rogers, Deputy Attorneys General, for Plaintiff and Respondent.

MEMORANDUM OPINION

In 2023, Timothy Shawn Victor petitioned to have his first-degree murder conviction vacated and to be resentenced under Penal Code[1] section 1172.6. After appointing him counsel and allowing briefing, the trial court denied the petition at the prima facie stage. We affirm. The jury instructions and verdicts conclusively establish that the jury convicted Victor either as the actual killer, or a direct aider and abettor with the specific intent to kill. Either theory of liability makes him ineligible for relief as a matter of law.

## I.

### *Background*[2]

Victor and Jose Flores were hired by Larry Tasa to kill Tasa's wife, Rebecca. Victor and Flores entered the Tasas' home, ransacked it to give the appearance of an interrupted burglary, and waited for Rebecca to come home. When she arrived, Victor and Flores slit her throat and killed her. They left with the jewelry she wore.

In 1998, a jury convicted Victor of first degree murder (§ 187, subd. (a)), conspiracy to commit murder (§ 182, subd. (a)(1)), and burglary (§ 459). The jury also found two special circumstances, that the murder was committed by means of lying in wait (§ 190.2, subd. (a)(15)) and for financial gain (§ 190.2, subd. (a)(1)), to be true. Victor was sentenced to life without the possibility of parole.

---

[1] Further undesignated statutory references are to the Penal Code.

[2] Our summary of the background facts is taken from the probation report and is provided for context only. We do not rely on this summary. (See *People v. Del Rio* (2023) 94 Cal.App.5th 47, 56 ["Ordinarily, a probation officer's report is not part of the record of conviction."].)

## II.

### *Section 1172.6*

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), effective January 1, 2019, significantly limited the scope of California's felony murder rule and eliminated liability for murder under the natural and probable consequences doctrine through two key statutory provisions.  (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Strong* (2022) 13 Cal.5th 698, 707– 708.)  Section 189 was amended so that a defendant is liable for felony murder only if he was (1) the actual killer, (2) a direct aider and abettor with the intent to kill, or (3) a major participant in the underlying felony and acted with reckless indifference to human life.  (*Strong*, at p. 708.)  Section 188 was amended to impose a new requirement that, except in cases of felony murder, a principal in the crime of murder can only be convicted where he or she acted "with malice aforethought," and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3); see *People v. Curiel* (2023) 15 Cal.5th 433, 449 (*Curiel*).)

Section 1172.6, subdivision (a), authorizes defendants who could not have been convicted for murder under current law to petition the sentencing court to vacate their conviction and resentence them on any remaining counts.  (See *Curiel, supra,* 15 Cal.5th at pp. 449–450.)  A person convicted of murder must file a petition containing a declaration that all requirements for eligibility are met, including:  (1) "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime"; (2) "[t]he petitioner was convicted of murder . . . following a trial"; and (3) "[t]he

3

petitioner could not presently be convicted of murder . . . because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)–(3).)

Upon receiving a petition that contains all the required information, the trial court must appoint counsel for the petitioner if requested (§ 1172.6, subd. (b)(3)) and "[a]fter the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that [he] is entitled to relief, the court shall issue an order to show cause" (§ 1172.6, subd. (c)) and proceed to an evidentiary hearing (§ 1172.6, subd. (d)(3)). However, the court may deny the petition at the prima facie stage if the record of conviction (which includes, among other things, jury instructions and verdict forms) conclusively establishes the petitioner is ineligible for relief as a matter of law. (§ 1172.6, subd. (c); *People v. Lewis* (2021) 11 Cal.5th 952, 970–971, 972.)

## III.

### *No Error in the Denial Order*

Here, the trial court after examining only the jury instructions and the verdicts found Victor ineligible for relief. It explained, "The guilty verdicts rendered in this case – first degree murder with malice aforethought, plus two true findings on the special circumstances of murder for hire and murder while lying in wait, and conspiracy to commit murder – all indicate[d] that [Victor] was either the actual killer or, if not, that he aided and abetted the actual killer with the intent to kill. Under either scenario and under any interpretation of the jury's verdicts and true findings on the special circumstances, [Victor] is not eligible for the relief he seeks." Reviewing the

4

denial order de novo (see *People v. Harden* (2022) 81 Cal.App.5th 45, 52), we agree with the trial court's assessment.

On the charge of murder, the trial court did not instruct the jury on the felony murder theory, the natural and probable consequences doctrine, or any theory that imputed malice to Victor based solely on his participation in a crime. Instead, it was instructed that Victor was liable for murder either as the actual killer or a direct aider and abettor. The jury was instructed that murder was the unlawful killing of a human being with "malice aforethought." It was further instructed the murder was of the first degree if it was perpetrated by "any kind of willful, deliberate and premeditated killing with *express malice aforethought*" and that malice is express "when there is manifested *an intention unlawfully to kill* a human being." (Italics added.) Further still, to find both the special circumstances of murder for financial gain and murder by lying in wait, the jury was instructed: "If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor . . . , you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that such defendant *with the intent to kill* aided, abetted, or assisted any actor in the commission of the murder in the first degree." (Italics added.)

Thus, by returning verdicts of guilt on first degree murder with true findings on the murder for hire and for financial gain special circumstances, the jury necessarily found Victor was either the actual killer or a direct aider and abettor with the express intent to kill. Both are still-valid theories under current law and forecloses his eligibility for relief as a matter of law. (See, e.g., *Curiel*, *supra*, 15 Cal.5th at p. 462 [direct aiding and abetting is still "a valid theory" of murder liability]; *People v. Mares* (2024) 99 Cal.App.5th 1158,

5

1166 ["Senate Bill 1437 did not affect actual killer theories"]; *People v. Coley* (2022) 77 Cal.App.5th 539, 546 ["direct aiding and abetting remains a valid theory" under current law].)

Although the record of conviction on the murder charge alone is clear, the jury's conviction of Victor on conspiracy to commit murder of the same victim leaves no room for interpretation. The jury was instructed the "crime of conspiracy to commit murder requires proof that the conspirators harbored express malice aforethought, namely, *the specific intent to kill* unlawfully another human being." (Italics added.) In finding Victor guilty of conspiracy to commit murder, the jury unanimously found he committed these overt acts:

- Victor and Flores "discussed, agreed, and planned to kill Rebecca Tasa." (Capitalization omitted.)
- Victor and Flores "drove to the Tasa residence in order to kill Rebecca Tasa." (Capitalization omitted.)
- Victor and Flores "ransacked the Tasa Residence in order to give the appearance that the house had been subjected to an interrupted burglary."
- Victor and Flores "murdered Rebecca Tasa when she arrived home from work." (Capitalization omitted.)
- Victor and Flores "removed items of jewelry from the body of Rebecca Tasa." (Capitalization omitted.)

The jury's findings on the overt acts further establish it did not convict Victor under any imputed malice theory because it found he personally harbored the express intent to kill Rebecca. " '[A]ll conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder.' " (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 641.) Section 1172.6 relief "is unavailable to a petitioner concurrently convicted of first degree murder and conspiracy to commit first degree murder where both convictions involve the same victim." (*People v. Medrano* (2021) 68

6

Cal.App.5th 177, 179.) The record of conviction here conclusively establishes Victor is ineligible as a matter of law.

Victor's arguments to the contrary fail to change this conclusion. First, pointing to the conspiracy instruction's language that the jury must find "[a]t least two of the persons specifically intended to enter into an agreement" to kill, he argues that because the conspiracy involved three people—him, Flores, and Tasa—the jury was permitted to find him guilty "if it found *Tasa* and Flores had the specific intent to kill and then imputing that intent to Victor." Second, pointing to the aiding and abetting instruction's language that "[e]ach principal, regardless of the extent or manner of participation, is equally guilty," Victor suggests this could have confused the jury that "an aider and abettor's mens rea must be his own" and thus imputed malice to him. Neither is a reasonable possibility, given the jury's specific findings that it was *Victor* and Flores who "discussed, agreed, and planned to kill" Rebecca and who drove to, ransacked the home, and lay in wait "in order to kill" Rebecca. There is no doubt here that the jury found Victor personally harbored express intent to kill.

7

## IV.

### *Disposition*

The order is affirmed.

DO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

RUBIN, J.